(C.D. 2285)

JOHN V. CARR & SON, INC. *v*. UNITED STATES

United States Customs Court, First Division

(Decided September 21, 1961)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Paul J. Gavin* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Henry J. O'Neill* and *Richard H. Welsh,* trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: Paragraph 402, Tariff Act of 1930, contains a provision for "Maple (except Japanese maple) * * *: Flooring." The plaintiff herein imported certain merchandise described in the invoices as "Selected High Grade Hard Maple lumber, dressed 4 sides and T&G." The collector classified the merchandise under the foregoing provision of paragraph 402 and took duty at the rate of 4 per centum ad valorem under the modification thereof by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T.D. 51802.

The plaintiff claims that the merchandise is not maple flooring and is entitled to free entry under the provision in paragraph 1803 of the said tariff act for "sawed lumber * * *, not further manufactured than planed, and tongued and grooved; * * * not specially provided for," with assessment of tax or duty under the provision in section 3424, Internal Revenue Code of 1939, as modified, for lumber, planed or dressed on one or more sides.

The merchandise consisted of maple wood (not Japanese maple) 1¼ inches wide by either 1¾ or 3 inches thick,[1] and 80 per centum of each shipment consisted of lengths over 7 feet long, the balance being from 3 to 16 feet long. At the center of one of the thickness sides, there is a projection which has been called a tongue, and, on the other thickness side, there is a depression which has been called a groove.

There is no question but that the merchandise at bar is a kind of lumber; that it is of maple; and that it has been subjected to processes of sawing, planing, tonguing, and grooving, and it is apparent that the sole question at issue is whether or not it is "flooring," or, more partic-

---

[1] It should be noted that the foregoing measurements are not the measurements of the pieces in their finished, imported state, but are the measurements of the rough lumber from which the imported pieces were made. The width measurement of the imported pieces is approximately 1¼₆ inches.

ularly, "maple flooring," as that term is used in paragraph 402 of the tariff act, *supra*.

Neither is there any question as to how the merchandise was produced and as to how it is used. The uncontradicted testimony as to its production is as follows:

Q. Mr. Baechler, will you please tell us the manner of production of Plaintiff's Exhibits 1 and 2?—A. Yes. To begin with, the lumber is sawed from logs which are in the natural or crude state, into sawed lumber. Then the lumber is piled outside in the yard, and permitted to air-dry for approximately six months' time. After it has been air-dried, it is then kiln-dried, and after kiln-drying, it is brought into the plant to be further sawed, planed, and tongued and grooved. The lumber is passed through a standard planing machine lengthwise, to apply the plane, tongue and grooving processes.

Q. Is that all done in one operation?—A. One single pass through the machine.

Q. By pass, you mean one operation?—A. One shot through the machine, yes. It emerges from the machine in the same form as when it went in, except that it has been planed, tongued, and grooved. [Tr. pp. 10–11.]

The merchandise is chiefly, if not exclusively, used in the United States for making bowling alleys or lanes. Such an alley or lane has what may be termed a "playing surface," 42 inches wide and approximately 79 feet long. The first 15 or 16 feet of the lane, up to the foul line, is called the approach; from the foul line to the center line of the first pin is 60 feet long, and the balance of the length, approximately 3 feet 10 inches, is the pin area or deck. Beyond the pin deck, is a pit into which the balls drop during play and from which they are returned to the players by means of a gutter at the side of the lane.

The 3-inch thick maple at bar (represented by plaintiff's exhibit 2) is used in the construction of the surface of the approach to the foul line, and for the first 16 feet beyond the foul line. From that point to the pin deck (except for the outside strip), the surface is made of pine of the same dimensions and having the same tonguing and grooving. The last 3 feet 10 inches, including the pin deck, is made of the same 3-inch thick maple.

The 1¾-inch thick maple (represented by plaintiff's illustrative exhibit 1) is used to fill in the gap between each lane.

During play, bowlers walk or use an accelerated pace on the approach area, using special shoes that do not contain metal in the soles so as to avoid injuring the surface. Except for necessary repairs or servicing, the rest of the playing surface is not walked upon by anybody. As is commonly understood, of course, the ball is rolled on the surface from the foul line to the pit in back of the pin deck, and the pins are placed for play on the surface of the latter.

Counsel for both parties have quoted, in the briefs filed, the definition of "flooring" given in Funk & Wagnalls New Standard Dictionary of the English Language (1941 ed.) as follows:

flooring, 1. Material from which to make a floor * * *

and the definition of the noun "floor" in the same work:

floor, 1. The bottom surface in a room or building, on which the inmates walk, and which supports the movable articles of furniture, etc. * * *

Counsel for both parties find in these definitions, as applied to the facts, support for their opposing positions. Counsel for the plaintiff points out that the evidence shows that bowling alleys or lanes are erected upon the floors of the buildings in which they may be located; that one does not walk "in the ordinary sense" on a bowling lane; and that there are no articles of furniture on a bowling lane. In short, counsel contends that the imported merchandise, when used for its intended purpose, does not serve the purposes of a floor and is not used as a floor.

On the other hand, counsel for the defendant points out that bowlers walk on the approach area of a bowling alley or lane during play; that the ball rolls on the remaining surface of the lane; and that the pins, as well as the ball, are supported by that surface. Further, as indicating the common understanding of the character of the surface of a bowling alley or lane, counsel quotes the definition of the term "bowling alley," as found in Webster's New International Dictionary, 1930 edition, as follows:

bowling alley. An alley for playing bowls; now, a covered place, usually with a smooth board *floor* 42 inches broad and 60 feet long, for playing at bowls, or tenpins. [Italics added.]

We are satisfied that if the decision in the matter were to rest upon the common meaning of the interrelated terms "flooring" and "floor," as exhibited by lexicographic definitions, we should be required to hold that the merchandise at bar is flooring, as that term is commonly understood. The definitions of those terms are certainly very broad and might easily comprehend the merchandise at bar. Compare the decision of our appellate court in the case of *Field* v. *Stow*, 18 C.C.P.A. (Patents) 1437, 49 F. (2d) 840.

However, it must be remembered that the tariff term with which we are here particularly concerned is "Maple * * *: Flooring" and not merely the term "flooring." Obviously, a general term, such as "flooring," applicable to many materials, would have a rather broad definition, but we think that when the term is qualified and when it is made to appear, as it does here, that the qualified term has a narrower or more special significance than the unqualified term, we are required to interpret or construe the term in the form in which it appears in the tariff act.

It does not appear that there are any lexicographic definitions of the term "maple flooring," and certainly none have been cited to us. The plaintiff has, however, provided aid to the court in the interpretation of the common meaning of the term by the oral testimony of four

witnesses engaged in the manufacture and/or purchase and sale in the United States of wood flooring, including maple flooring. The testimony of these witnesses is uniform and uncontradicted, and is supported by certain documentary evidence.

It is axiomatic in customs jurisprudence that tariff acts are written in the language of commerce, which is presumably that in common use. *Swan* v. *Arthur*, 103 U.S. 597, 598, 26 L. ed. 525, 526. Neither party claims that there existed in the trade and commerce of the United States any meaning for the term "maple flooring" different from its common meaning, and the rule of commercial designation is not here involved.

The interpretation of the common meaning of statutory terms is matter of law within the cognizance of the court. *Marvel* v. *Merritt*, 116 U.S. 11, 29 L. ed. 550, and *Sonn* v. *Magone*, 159 U.S. 417, 40 L. ed. 203. In determining such meaning, the judges of the court "may refresh their memory and inform their conscience from such sources as they deem most trustworthy." *Jones* v. *United States*, 137 U.S. 202, 216, 34 L. ed. 691, 697. Among the sources to which the court may advert are dictionaries, lexicons, written authorities, and the testimony of witnesses whose backgrounds and experience are such as to show that they have reason to be familiar with the meaning of the term and its use in the United States. *Robertson* v. *Solomon*, 130 U.S. 412, 32 L. ed. 995; *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, T.D. 42713.

The information imparted by such aids is not conclusive or binding upon the court, but where, as here, there is a dearth of lexicographic or written technical authority on the meaning of the statutory term, we think, as was held in the case of *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co.*, 18 C.C.P.A. (Customs) 279, 282, 283, T.D. 44450, "the uncontradicted testimony of competent witnesses as to the common meaning of such term is entitled to great weight."

The testimony of the four witnesses establishes that the term "maple flooring" has a much more restricted meaning than the meaning of the term "flooring" alone, and refers to wood which is finished and used in a manner very different from that of the wood at bar.

The most outstanding differences between maple flooring, as the witnesses understood that term, and the wood at bar are that maple flooring is tongued and grooved on its narrower dimension, and the surface used for wear is its wider surface. The merchandise at bar is tongued and grooved on its wider dimension, and the surface used for wear is the narrower surface.

Moreover, it appears that the tonguing and grooving of maple flooring is set off center of the narrower dimension, so as to permit resurfacing after wear, while the tonguing and grooving of the merchandise represented by plaintiff's exhibit 2 is in the center of the wider dimen-

sion. Further, the tonguing and grooving of maple flooring are much more accurate and fit with greater precision than is exhibited in the case of the merchandise at bar, and maple flooring is usually "end-matched" (provided with tonguing and grooving at the ends) and "flat-grained" (the exposure of the growth rings being on other than the wearing surface), whereas the merchandise at bar is not end-matched and is edge-grained, rather than flat-grained.

It was established that there are grading rules, applicable throughout the United States, prescribed by maple and other hardwood flooring manufacturers' associations, and copies of these rules were offered and received in evidence. These, in general and, in most particulars, corroborate the testimony of plaintiff's witnesses.

Accepting the testimony of the witnesses and the documentary evidence as aids to the court in its understanding of the common and commercial meaning of the tariff term "maple flooring," we are satisfied that the merchandise at bar is not within such meaning of the term. Accordingly, the protest claim for free entry under paragraph 1803 of the Tariff Act of 1930 is sustained, with assessment of tax or duty at the rate of $1.50 per thousand feet, board measure, under section 3424 of the Internal Revenue Code of 1939, as modified by T.D. 51802.

Judgment will issue accordingly.